Good morning, Your Honors. I'd like to reserve three minutes. Fine. I'm Richard Jahn. I'm the Chapter 7 trustee in this case, the bankruptcy case. It comes from Chattanooga, and the bankruptcy court ordered me to abandon the debtor's residence, and I considered it a very valuable asset of the estate, to have $100,000 equity in it over exemption. So that's why we're here. This case raises some really – Initially, I thought you wanted to evict and sell. Correct. Okay. Sure. But – The homeowners are the ones who sought to have it abandoned. Yes. Do I understand it correctly? That's correct. The medium creditors, right off the bat, the debtors said, you know, we're not leaving our house. You can't make us leave. We're not going to leave. I said, okay, and so I evaluated their house, and it had a lot of equity. It's a big fact. Pardon? It's a big fact, the dispute, whether it had equity. That's what I decided. I sent a realtor out and looked at it, and it's a very fine house. But, yes, that was disputed, but that was my call. I mean, I saw there was equity there, and they said, we're not moving. So a few weeks later, I filed a motion to evict them because I needed to sell the property. We can't close a sale down there in Chattanooga unless the house is vacant. So I did not want to list it until I knew I could get them out. Most debtors say, we're here in bankruptcy. We want to discharge, and we know we have to leave our house if it has equity. So these people didn't. But if our house doesn't have equity, then what? Assume – that's a hypo that you disagree with factually being applicable. But if there is no equity in the house? Then I wouldn't be selling it. I mean, I would – And you wouldn't be trying to evict them either? No, no, no, no. And most houses don't have equity today. Why isn't this a case just of factual fuss? Was the house worth $108,000, or was it worth $200,000 before the mortgage? Well, let me get to that. Let me – my first issue, and this is a bright-line issue. I am saying that insolvent debtors – these people were insolvent. They had $400,000 in claims on their petition. So they're clearly insolvent debtors. They don't have standing to file the motion to compel abandonment, which they filed after my motion to evict. It would seem that they would have the most standing in the sense of the most personal interest. So why can you make this legal argument that they don't have standing? Because the test in bankruptcy is not that they have a personal interest in the outcome. It is pecuniary interest in the asset. And that's the rule in this circuit. It works everywhere else. And that – Well, you say that. Now, what about this BAP case of N. Ray Morton from 2003 that party and interest refers, quote, to anyone who has a practical interest in the outcome of a case? I know that that case says that, or it gives the general rules. And in federal standing, if you have an interest in the outcome, that can give you standing. Well, that's not in bankruptcy. Bankruptcy, they limit debtors very much from interfering with the administration of the estate. They can't object to claims. The estate is for the benefit of creditors, essentially, right? Sure. But debtors are not supposed to interfere with the administration, which is really what happened here. They wrecked this estate. Okay, so if this is a matter of clear-cut, black-letter law, what case should we go to for that principle? I think there's no case that has decided this. I can't find a case where someone has contended that debtors are not the parties that the statute is intended to protect. These insolvent debtors are not the parties that the statute is meant to protect. So that's called – I call it statutory standing, and that's in my brief. And I think that applies here. And that's – I think it's a case of first impression. Across all circuits? Across the circuits. I really do. I can't find a case. It goes either way, that says they do or they don't. And the key is that you're saying insolvent debtors. Right, exactly. They don't have a pecuniary interest in the house. And in the lower court, I thought, well, the only pecuniary interest they must have is in the homestead exemption. So at the first hearing in the matter, I decided I'm going to cut them off at the pass, and I wrote a check, $7,500, tendered it to Mr. Bible. I said, here's their homestead exemption, and I want them out. Okay? So that's the second bright line issued. I don't think it's been decided across the country. I can't find a case where a trustee actually paid them their exemption. But to get them out, and to, I thought, cut off all their standing, I tendered their exemption. Now, this was a tender. This wasn't an offer of judgment. I tendered the check, and they, no, we don't want it. Okay? So Judge Posner, referred to a minute ago, wrote 20 years ago in a case that if the trustee tenders the exemption to the debtors in their home, he can tell them to skedaddle. So that's what I want this Court to rule. Is that a quote? That's a quote. I love it. He can tell them to skedaddle. So. In that case, what is it? N. Ray Zichle? Zichle, right. In that case, though, there wasn't a fuss about whether the House had equity in it. It clearly did have equity, and the debtors there wanted their homestead exemption. Oh, that was whether the trustee could charge rent. But I want. . . Well, but the House clearly had value to the unsecured creditors.  Well, I had determined that it had a lot of value. That was my prerogative to value. Where did you go wrong on that? Where did I go wrong? Yeah. I did. Oh, you think it had value, but the homeowners, the debtors harmed that value by not getting out? No, no. This House, they already told me we're not moving. So they handed these appraisals to me. And the appraisers, and this is a bit interesting, valued the House high with, like, 80,000 equity, 70,000 equity. And then the debtor says, well, our House needs repairs. And so he hands them some invoices from contractors to, like, tear out all the flaws, all the sheetrock. Because it had mold in it, right? Allegedly. But I went out there, I had a home inspector. No, there's no mold. The debtors never proved any mold. That was just, it was all fake. So there are fact questions which were resolved by the bankruptcy judge against you. That's true. In terms of the experts. He resolved that. So I keep getting back to this legal question, which you say is a new issue. Which, why should insolvent debtors not be able to interfere, as you put it, with? Because it gives them a turn. It's basically interpreting the statute as a turnover. They shouldn't have a right of turnover of an asset that belongs to the estate. It's not whether they shouldn't. They don't. They don't. They're not parties in interest with that statute. And they should not have standing to bring these motions. I hate to ask a practical question that reveals my ignorance, but I will. If the debtors are correct that the value of the house is exactly equal to the mortgage on the house, hypothetically, and if they challenge your right to evict, and if they win that they cannot be compelled to abandon, then who gets the house in the end? What happens to the house? Well, I contend that when I give them their homestead, I make the move. I take the house for better or worse, and it should be an unconditional. But apart from the homestead tender, and I realize this is a hypo because you made the homestead tender, but in this hypothetical situation where the value of the house exactly equals the mortgage, and we say that the debtors had standing, so they do win their motion to compel abandonment, which is their motion, right? That's right. So in the end, who is it who gets the house? Is the mortgage on the house then paid off? Technically it goes back to the debtor. The house goes back to the debtor, but what about the mortgage, the bank? Subject to the mortgage. So you don't give it back to the mortgage, but technically it goes back to the debtor. But there's a discharge in here, right? That their debt is discharged. The debt on the house? It's discharged, but the lien is on it, and usually the debtors will leave. The secured party who has the security in the house of the $91,000 or whatever it is gets the house, right? Because it's a secured party. They would take it unless the debtors could pay up the deficiency. The mortgage company doesn't get the house unless the debtors default on the mortgage. But they're insolvent. They're insolvent. They get a fresh start, they call it. They get money from manna from heaven or some other source and can keep paying the mortgage. Normally they leave. I try to sell the house, and if I can't sell it, I abandon it, and then the stay is lifted and the mortgage company forecloses. Okay, but they're hoping, if they want to stay in the house legitimately, they're hoping that they can come up with some way of paying the mortgage company back the $91,000 that is owed on the mortgage and secured by the house. Well, that comes in reaffirmation, and I think they did sign a reaffirmation. But let me cover a couple things because Your Honor asked about the value of the house. The trial court abused its discretion in trying to value this house. Under the KC machine test, you're supposed to just look at upside potential in this asset. The debtors at the hearing offered $50,000 to the estate in a Chapter 13 plan, and that is significant. That is an upside benefit, and the trial court just disregarded that. My proof was completely ignored. So this was a Chapter 7 or a Chapter 13? This is a 7, but they offered, and remember their motion to compel abandonment included a motion or a motion to convert to 13. So they present in the hearing, we'll give $50,000 for our house. Well, that's upside benefit for the estate, and it's just abuse of discretion to abandon that. And even one of their own appraisals was $125,000, which would have been plenty to administer the house. Your red light is on, so if you want to say your time for rebuttal, that's fine. Morning, Your Honors. Tom Bible. It was Willie Glasscock for the Burks. Your Honors, the way we see this case, it's simply a very common problem that comes up in bankruptcy court, an argument over the value of a little house in Chattanooga, Tennessee. These arguments are often resolved in settlement, but here we couldn't reach settlement. I'm curious about what counsel said just at the last minute there, if I may ask this question. He mentions that the court abandoned the property even though the debtors, I don't know what sort of debtors they were at the time, but they offered $30,000. So what do you say to that? Your Honor, this is, if I can give a little background and give some information on that. Normally what happens in these cases where there's real estate, there's almost never an asset. Okay, but we're told this one was an asset. Well, Mr. John says it's an asset case, Judge Wittenberg and Judge McDonough says it's not. Normally what happens is the house goes into bankruptcy, the trustee sees there's no equity in the house, he abandons the house back to the debtors. Often the debtors, having to have a place to live, and oftentimes mortgage payments are less expensive than rent, they focus on trying to keep their house current. So whether the mortgage company offers them a reaffirmation agreement or not, they're current on their house when they go into bankruptcy, while they're in bankruptcy, and when they come out of bankruptcy, and they keep their house. Now, reaffirmation agreements are great because they give the debtor some certainty and they help them rebuild their credit, but they're not necessary because the mortgage company retains the lien on the property and the debtor and the creditor are in this sort of ambiguous dance. Renegotiating. Basically staying status quo where there's no default, yet there's no real debt left, but the lien remains. So if the reaffirmation payments are not made, then the lien holder can go in and take the property? If the stay's been lifted already or if the case is over, they have their state foreclosure rights. Yes, Your Honor. So what's this $30,000 or $50,000 offer in Chapter 13? Your Honor, the Burks want to stay in their house. The Burks had a sister who had some money. So we tried for months. We went just a few weeks. We tried for months to negotiate this with the trustee. We got an appraisal off the bat to sort of give us some guidance on what sort of bankruptcy we should file. Should we file a 7? Do we need to file a 13? Can we do neither? So the first appraisal came back before the case at $108,000. When you take the $92,000 loan against the house plus the $7,500 homestead exemption and the theoretical cost of sales, there is no equity in this house at $108,000. So we showed that to Mr. John and it devolved from there. As far as the settlement negotiations, when we were about to go to the hearings on the motion to require the debtors to vacate and our motion to compel abandonment or convert, we were trying to reach a settlement. Settlements are not uncommon in bankruptcy. In fact, almost everything settles. So the sister said she could come up with $20,000. The Burke said, okay, we can come up with the rest of it over a period of years in a Chapter 13 plan. Mr. Burke, in another lifetime a decade ago, was a home builder and did fairly well for himself. Ten years ago, the market fell to pieces and he was left without an income and he incurred a lot of debt on some real estate deficiencies that he was left with. So he really, at this point, did a little remodeling, did a little real estate work, and drove from Uber. So he thought he could increase his hours and days at Uber with the $20,000 from his sister and put together a Chapter 13 plan that would hopefully be enough to satisfy this trustee. Bear in mind, we had a $108,000 appraisal. We second-guessed ourselves because Mr. John was so adamant about value and we got another appraisal. It came back at $125,000. So we're sitting here saying, we're more than meeting this man halfway. We want to stay in our house. We want this problem to go away. We've got the family to help and we're going to go and drive Uber late at night simply to stay in our house. We have three adult children, one of which has some issues mentally, the other one has been through a traumatic accident and is still recovering, and the third one is still at home. So we want to stay in our home. So getting back to one of the initial points of your opponent's standing, he says that there's no case really of a circuit level that addresses whether your clients have standing. Can you address that point? As to the case or to the standing issue? Well, as to whether there is any case that decides the standing issue. Well, I think Judge Gilman brought up the Morton case. Morton. Where the standing is equated to a personal stake, not necessarily a pecuniary interest. I think it's important to look at 554B here. I think it's, if I can paraphrase, I don't have the code out with me, but 554B says that a party in interest can file a motion to compel abandonment, quite simply. Now, so that begs the question that Mr. John brought up, what's a party in interest? Well, if you look at the Senate note underneath 554B, the Senate, I think it's 95-989, indicates that a person with a possessory interest is a party in interest. So I think it's clear the Burks are a party in interest here, and they have the right to file this motion to compel abandonment. The answer to Judge Moore is apparently there is no case that flatly says that. Well, the amici seems to offer a few cases. The amicus brief. Yes, Your Honor. Page 9. Yeah, is that the DeWine case? Well, it's, their names like Barletta, Enri Thompson. Now, these are DDC, I mean, I don't know what courts they are. It's bankruptcy reports. Yeah. Okay. Thompson and Barletta? Yes, Your Honor. Yes. And they claim they have the personal, it's a personal stake standard, it looks like. So there are no, but these cases are various bankruptcy and or district court cases. And this Morton case, what court is that from? That's the BAP from the Sixth Circuit, okay? Yes, Your Honor. From 2003. So there's no, there's no court of appeals level case one way or the other. No, Your Honor, but I would point out a couple other cases that confer standing, seem to confer standing. There's a recent Eastern District of Tennessee case that's kind of interesting where a debtor had standing. It's the Enri Hodges case. And it's at 518 Bankruptcy 445. That's an interesting case where a debtor had filed Chapter 13 and converted it to Chapter 7. The trustee, the trustee thought that he should be entitled to the equity built up over the course of the 13 and the court said, no, you can't. Excuse me. Normally you'd think that just in terms of somebody outside the special area of bankruptcy would think that the debtor should have standing. And so I'm wondering what leads the courts that go the other way to conclude that the debtor doesn't have standing. Well, Your Honor, I don't think standing would even be an issue here without this novel tender. I believe this has a, what Mr. John tried to do was make an end run around the statute and foreclose my client's rights by this unprecedented novel tender of a homestead exemption. Without that. Well, let's, I mean, you got that. That's what you have here. Right. So, I mean, if it's novel, maybe it's clever, but interest in the estate is the section of the bankruptcy code that controls here, right? And so you got to deal with this clever situation. Well, it's clever, Your Honor, but it's not permitted. Not permitted. I don't believe that this tender is permitted. Why wouldn't the tender be permitted, but it not be enough to destroy standing? I don't think it's enough to destroy standing. I don't think it should be tendered. It would have been perfectly appropriate if, in fact, the bankruptcy court held your house was worth $200,000 before the mortgage. There would have clearly been an interest to the unsecured creditors, and you couldn't abandon it. I don't. Or, I mean, the court would not have abandoned it because the court would have found equity available for the unsecured creditors. So it all boils down to the factual finding of the bankruptcy court of what this house was worth. Well, Your Honor, the way I understand the law, for the trustee to tender a homestead exemption, the funds need to come from one of two places. That's from the estate. That's probably the point. Or from a loan. Okay? Where did they come from? Do we know? They came from his pocket. Pocket. They came from his pocket. The code clearly states out if the estate is going to borrow money, it has to be after a hearing. It has to come up before a judge on a hearing where this loan is requested and approved. This didn't happen. Judge, did you raise this issue in the bankruptcy court that the tender came from an inappropriate source, i.e., the trustee's pocket? Yes, Your Honor. It's, and if I may continue along that train of thought, it's wrong on several, it's wrong on many levels.  And there's no statutory authority for a trustee to lend himself money. It's just not there. If you look at 704, the trustee that enumerates the trustee's duties, the trustee is to preserve or, excuse me, maintain and liquidate. Not speculate. Maintain and liquidate. But does the homestead exemption have some kind of priority such that it would be proper for a trustee to make payments of the homestead exemption out of whatever assets there are in the bankrupt estate, even if the assets are less than the debts? But there were no assets. Except for the house. There's no asset whatsoever. Correct. There's no bank account or anything. Nothing that wasn't exempt. There is nothing to pour into this estate to allow him to buy this homestead exemption. Nothing. Well, I'm going to ask the trustee this question, so I'll ask you in advance. Where in the statutory scheme is there, I'm wondering about the trustee bringing this appeal, is there grounds for appealing the denial of or the abandonment or the denial of sale, et cetera, where there's no equity in this home? That might very well turn this standing issue on its head, Your Honor. It clearly would be okay if we decided that the district court abused its discretion and are clearly erroneous in its factual findings of the value of the house. If that was the decision, then I can understand that position. But I guess the question that Judge Cook is asking is, is there a final judgment or is there an appealable judgment here? Your colleague says yes. Okay. So what is the basis for the appeal of your opponent? Obviously, it's your opponent that needs to address this. I'm not sure, Your Honor, how to attack that. That's all right. I asked to give you an anticipatory chance to respond, but it doesn't matter. But further, the trustee has no authority, no statutory authority. The trustee handbook also says the debtor must maintain or must come into a case with a position of being disinterested. Now, obviously, he was disinterested when he came into the case, but by trying to insert his own fund, $7,500, his disinterestedness goes out the door. He's no longer disinterested. I thought it was $500. It's $7,500. No kidding. Yes. Out of his own pocket. What do you think his motivation was? Your Honor, I think that his motivation was that if he could take a house, get these debtors out, clean it up, put some money into it, maybe fix the roof, fix this boarded-up fireplace, take care of these cosmetic problems, paint over. I know, but what's in it for him? We know that if he can increase the value, then this commission goes up proportionally. And he gets the $7,500 back at the start. Well, he didn't have to cough it up in the first place. And he has an estimate of the value of the house that it's $200,000. So this is not pie-in-the-sky kind of thing from his perspective. Well, I think maybe, Your Honor, after hearing all the testimony at the trial court level, I believe that even his own witnesses came way off this $200,000 level. So the only one stuck on $200,000 at this point is Mr. John. Your red light is on, so we will thank you for your argument. And we would ask that the court uphold the district court's opinion. Thank you. Thank you. Was this an appealable appeal? Yes, Your Honor. This was not an adversary proceeding. It was a contested matter, and there was a final order. What interest of the estate is at bar here, as opposed to what smells like your personal interest? What interest are you advocating for the estate? So is this for the creditors? Totally for the creditors. But you thought that they could, okay. You're duty-bound to look for money for creditors. I understand that. I know. I've been doing this for 40 years. And I know that the debtors had these fake contractor repair estimates, which the appraisers just deducted. They appraised the house, like, at $180,000. All right. You didn't buy the idea that they, all right. So, really, this house is a $200,000 house. It's probably worth more than that now. It's very desirable. That's my prerogative to do that. What remedy can you expect from this court? If the court reverses the district court, where do you say the remedy goes? Now, where's the house been all this time? Let me sell it. Okay. I want them to move out, and please let me sell the house. Did you say my house? I thought I heard you say that. No, the house. Okay, good. Let me address some things important, quick, because, Judge Gilman, you're focused on what the court found is value. There really should not have been a valuation hearing at all. If I'm wrong about standing and this hearing would take place, the trial court is not defined of value. Now, a number of courts do. They think that they're supposed to value the house like it's a Chapter 11 collateral hearing. You're supposed to look for upside potential. What is the upside potential? And you shouldn't make the estate have to hire experts. Yeah, but you're going on. I think you've answered that question. I need to ask you before you sit down. Okay. Where is the authority for you to pay money not out of the estate? That's an important question that bothers me a good bit. I can go to that. Trustees advance money in these estates all the time. Where's the authority? I'm looking for the section of the bankruptcy code that permits a trustee to do that. Well, it's not the borrow money section. That's where, if we're running a business, we can borrow money. We advance money all the time as expense. We pay for insurance. Out of the estate? No. Oh, no, we advance it ourselves. There's no money in these estates. Trustees typically get in the business of trying to make that sale by paying money. This estate was in crisis. These people caused it. And I did something I usually don't do, and that is advance the whole homestead to these people. But it was your own personal fund. Sure, it was my money. I knew I could get it back. But that should cut them off at the pass. I should get possession of the house. And the lower court ignored that. Right now you're out $7,500 of your own money. I would be. They didn't take it. They didn't accept it. I'm sorry. But it was a valid tender. Thank you. But you're saying, just to clarify one point you just made, you said that trustees frequently will make insurance payments. So clearly houses have to be insured in case there's a fire or a storm or something like that. And is it trustees usually doing it out of their own money? We do it out of our own money. And then later we get approval from the court to pay it back. We do that. But we do it without asking. I mean, this is something between us and the U.S. trustee, and it's not an issue. We advance money all the time. I advance money for debtors to move out. I heard counsel say you couldn't do it. You heard counsel say it's not permitted. Not true. That's not true. Under that statute, that is where you're running a business. So we thank you. Your red light is on, too. We've taken you beyond it with our questions, but that is the purpose of oral argument is for us to ask questions. The debtors have gotten a windfall in this case, and it should be reversed. Thank you. Thank you both for your argument. The case will be submitted.